1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9               FOR THE EASTERN DISTRICT OF CALIFORNIA
10
11  JAMES EDWARD MAGEE,                     No.  2:15-cv-2318 GGH P
12                   Petitioner,
13          v.                              ORDER AND FINDINGS AND
                                            RECOMMENDATIONS
14  ERIC ARNOLD, Warden,
15                   Respondent.
16
17          Petitioner, a state prisoner proceeding pro se, has filed a petition for writ of habeas corpus

18  pursuant to 28 U.S.C. § 2254.  Petitioner has paid the filing fee.  Petitioner challenges the 2014

19  decision by the California Board of Parole Hearings (BPH), not because he was found unsuitable

20  for parole, but because it failed to comply with procedural policies calculation of an adjusted base

21  term set forth in a state court case, In re Butler.  Petitioner believes that if such policies were

22  followed, California case law would require his release.  On January 19, 2016, this court issued

23  an order to show cause why the petition should not be dismissed, along with a tentative opinion.

24  The court invited respondent to file a reply to petitioner's response to the order.  Petitioner, for

25  the most part, reduces the issue to a request that this court enforce a correct interpretation of state

26  law, albeit he asserts that an incorrect interpretation has constitutional ramifications.  Having

27  reviewed both petitioner's response and respondent's reply, the undersigned believes in an

28  abundance of caution that the entire, previous tentative ruling should be replicated, and declines

                                            1

1  to change the tentative ruling.  The undersigned now issues the following findings and

2  recommendations, as repeated for the most part from the previous order.

3  Review of the federal habeas petition and attached exhibits demonstrates that petitioner is

4  not entitled to relief on the grounds alleged, thus requiring dismissal of the petition.  See Rule 4,

5  Rules Governing Section 2254 Cases in the United States District Courts ("[i]f it plainly appears

6  from the petition and any attached exhibits that the petitioner is not entitled to relief in the district

7  court, the judge must dismiss the petition....").

8  Petitioner's underlying claim is that when he appeared for his parole hearing on May 9,

9  2014, the BPH, in finding him unsuitable for parole, "fixed only his base term, [] and refused to

10  fix his adjusted base term which would have involved specific enhancements, then deducting pre-

11  prison credits and applicable post-conviction credits," in accordance with a settlement agreement

12  in a state court case (In re Butler, California Court of Appeal Case No. A139411 (First Appellate

13  District, Division 2)).  Petitioner complains that with the Butler settlement, the BPH's policy

14  changed from fixing base terms and adjusted base terms only after a finding of parole suitability,

15  to a new policy which mandated that the BPH fix terms even where the prisoner has been found

16  unsuitable or denied parole.  Petitioner contends that the BPH's failure to comply with this

17  settlement agreement violates his due process and equal protection rights, as well as the First and

18  Eighth Amendments because it has impeded his right of access to the courts, and is cruel and

19  unusual punishment.  (ECF No. 1 at 5-6.)  Petitioner states that although he was sentenced to

20  seven years to life with the possibility of parole, he has served 36 years, which is twice the middle

21  term of fifteen years which under the BPH matrix is the middle term and represents the statutory

22  maximum.  At his 2014 parole hearing, petitioner contends that the BPH set his base term at

23  fifteen years, with no other adjustments.  As petitioner has already served twice the amount of the

24  fifteen year maximum term set by the BPH, he ultimately claims his sentence is grossly

25  disproportionate and constitutes cruel and unusual punishment.  (ECF No. 1 at 7-8.)

26  The case of In re Butler was actually two cases, one dealing with Butler's suitability for

27  parole, formerly published at 224 Cal. App. 4th 469 (2014) and ordered depublished, now

28  appearing at 169 Cal. Rptr. 3d 1, and a separate lawsuit relating to the issues discussed above.

2

1    Evidently, the settlement in the latter case requires the Board to announce and implement the

2    procedures petitioner herein contends should be applied to him.  See in re Butler, 236 Cal. App.

3    4th 1222, 187 Cal. Rptr. 3d 375 (2015) and 2015 WL 365 8409 (Cal. App. 2015).  Apparently,

4    the stipulated order settling the case applied to a class of California prisoners.  In re Butler, 236

5    Cal. App. 4th at 1244.  The calculating of the base and adjusted base terms at the outset of the

6    sentence was viewed as assisting the courts in determining whether an indeterminate sentence

7    was becoming excessive, or was in fact excessive.  In re Butler, 236 Cal. App. 4th at 1243-44.[1]

8    This calculation might have a potential to discourage BPH from unduly denying parole

9    suitability, but the case did not mandate parole suitability findings in a prisoner's favor at any

10   particular time.  Id.  Thus, the calculation of base and/or an adjusted base term in petitioner's case

11   would have only a speculative effect on whether petitioner would be granted parole before the

12   expiration of his life.  Regardless, speculative or not, In re Butler deals with only with state

13   administrative law, i.e., procedures to be followed by the BPH.

14        In 2011, the United States Supreme Court overruled a line of Ninth Circuit precedent that

15   had supported habeas review in California cases involving denials of parole by the BPH and/or

16   the governor.  See Swarthout v. Cooke, 562 U.S. 216, 131 S.Ct. 859, 861 (2011).  The Supreme

17   Court held that federal habeas jurisdiction does not extend to review of the evidentiary basis for

18   state parole decisions.  Because habeas relief is not available for errors of state law, and because

19   the Due Process Clause does not require correct application of California's "some evidence"

20   standard for denial of parole, federal courts may not intervene in parole decisions as long as

21   minimum procedural protections are provided.[2]  Id. at 861–62.  Federal due process protection for

22

23   [1]  California's parole scheme contemplates that a prisoner sentenced to a term of seven years to
     life must be found suitable for parole before a parole date can be set.  Criteria for determining
24   whether a prisoner is suitable for parole are set forth in California Penal Code § 3041(b) and
     related implementing regulations.  See Cal.Code Regs. tit. 15, § 2402.  If, pursuant to the
25   judgment of the panel, a prisoner will pose an unreasonable danger to society if released, he must
     be found unsuitable and denied a parole date.  Cal.Code Regs. tit. 15, § 2402(a).
26   [2]  Citing Greenholtz v. Inmates of Neb. Penal and Correctional Complex, 442 U.S. 1, 16 (1979),
     the Supreme Court noted it had found under another state's similar parole statute that a prisoner
27   had "received adequate process" when "allowed an opportunity to be heard" and "provided a
     statement of the reasons why parole was denied."  Swarthout, 131 S.Ct. at 862.
28

3

1    such a state-created liberty interest is "minimal," the determination being whether "the minimum

2    procedures adequate for due-process protection of that interest" have been met.  The inquiry is

3    limited to whether the prisoner was given the opportunity to be heard and received a statement of

4    the reasons why parole was denied.  Id. at 862–63; Miller v. Oregon Bd. of Parole and Post–

5    Prison Supervision, 642 F.3d 711, 716 (9th Cir.2011) ("The Supreme Court held in Cooke that in

6    the context of parole eligibility decisions the due process right is *procedural*, and entitles a

7    prisoner to nothing more than a fair hearing and a statement of reasons for a parole board's

8    decision.") (emphasis in original).  This procedural inquiry is "the beginning and the end of" a

9    federal habeas court's analysis of whether due process has been violated when a state prisoner is

10   denied parole.  Swarthout, 131 S.Ct. at 862.  The Ninth Circuit has acknowledged that after

11   Swarthout, substantive challenges to parole decisions are not cognizable in habeas.  Roberts v.

12   Hartley, 640 F.3d 1042, 1046 (9th Cir.2011).

13          Moreover, petitioner's argument that the Board fixed only his base term but did not set an

14   adjusted based term raises only an issue of state law.  As set forth in Swarthout, the *federal* due

15   process protections do not include adherence to California procedures.  As more recently re-

16   emphasized by the Supreme Court, "we have long recognized that 'a "mere error of state law" is

17   not a denial of due process.'"  Swarthout, 131 S.Ct. at 863 (citations omitted).  Federal habeas

18   review does not lie for alleged errors of state law.  Id.  See also Rivera v. Illinois, 556 U.S. 148,

19   158 (2009):

20                   "[A] mere error of state law," we have noted, "is not a denial of due
                 process." *Engle v. Isaac*, 456 U.S. 107, 121, n. 21, 102 S.Ct. 1558,
21               71 L.Ed.2d 783 (1982) (internal quotation marks omitted).  *See also
                 Estelle v. McGuire*, 502 U.S. 62, 67, 72–73, 112 S.Ct. 475, 116
22               L.Ed.2d 385 (1991).    The Due Process Clause, our decisions
                 instruct,  safeguards  not  the  meticulous  observance  of  state
23               procedural prescriptions, but "the fundamental elements of fairness
                 in a criminal trial [or a parole hearing]." *Spencer v. Texas*, 385 U.S.
24               554, 563–564, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967).

25   As stated in Little v. Crawford, 449 F.3d 1075, 1083 n. 6 (9th Cir.2006), a showing of a possible

26   "'variance with the state law'" does not constitute a federal question, and federal courts "'cannot

27   treat a mere error of state law, if one occurred, as a denial of due process; otherwise, every

28   erroneous decision by a state court on state law would come here as a federal constitutional

1     question.'" (citation omitted).  See also Bonin v. Calderon, 59 F.3d 815, 841 (9th Cir.1995)

2     (transgression of a "state law right does not warrant habeas corpus relief"); Langford v. Day, 110

3     F.3d 1380, 1389 (9th Cir.1997) ("alleged errors in the application of state law are not cognizable

4     in federal habeas corpus" actions).  Accordingly, even if the Butler settlement is in effect at this

5     time and requires the adjusted base term to be set in this case, that term is to be made by the BPH

6     in accordance with California law, not by this federal habeas court.

7          Thus, petitioner's ultimate constitutional claims derived from state law and the California

8     constitution, asserting violation of substantive due process and/or cruel and unusual punishment

9     run afoul of the same state law irrelevancies for the federal interests involved.  Although

10    petitioner's arguments arguably find potential merit within the California system,[3] but evidently

11    not with the state courts which reviewed petitioner's claims in his case, petitioner essentially asks

12    this court to "overrule" the state courts in *his* case, and determine the matter anew applying its

13    own "correct" interpretation of California case law.[4]  Again, the Supreme Court has clarified that

14    the only *federal* issue that this federal court my hear in regard to petitioner's suitability for parole

---

15   [3]  California law recognizes the right to a fixed parole date for indeterminate sentences, unless the

16   BPH legitimately finds that public safety requires continued incarceration, to be a matter of
substantive due process.  See In re Lawrence, 44 Cal. 4th 1181 (2008).  Some appellate cases

17   have indicated that a term of imprisonment in excess of the maximum base term calculated by the
BPH, or the adjusted base term, to be possibly a matter of cruel and unusual punishment under

18   *state* law.  See In re Stoneroad, 215 Cal. App. 4th 596, 654-655 (2013).

19   [4]  In any event, petitioner's ultimate claim rests on the misapprehension that under state law the
base term is the full measure of the time he legally can be required to serve for his crime and that,

20   if the numbers set forth in the matrix are exceeded, his sentence will *automatically* be rendered
cruel and unusual.  Petitioner is informed that the base term is simply a starting point, and his

21   "adjusted period of confinement" will consist of his base term plus "any adjustments."  Cal Code
Regs. tit. 15, § 2411(a).  Such adjustments may be made for use of or being armed with a weapon,

22   causing great loss, prior prison term(s), multiple convictions, and other factors such as pattern of

23   violence, numerous crimes or crimes of increasing seriousness, the defendant's status at the time
(e.g., on parole or probation), as well as other aggravating factors.  Cal.Code Regs. tit. 15, §§

24   2406–2409.  These are matters for the Board's consideration at petitioner's next parole suitability
hearing.  As described here, the opportunity for a suitability hearing, even with a direction to

25   consider relative culpability, does not restrict the discretion otherwise granted to the BPH to

26   determine when a prisoner will actually be released on parole, albeit that discretion must be
exercised reasonably pursuant to California law.  Lawrence, supra.  The BPH does not sentence

27   petitioner; only the sentencing court can do that.  The BPH cannot revise sentences; it can only
act within California law to set parole dates, if prisoners sentenced to an indeterminate term are

28   found suitable for parole at all.

1    is whether he received due process, that is an opportunity to be heard and a statement of reasons

2    for the parole denial.  Swarthout, 131 S.Ct. at 862.  The transcript from the hearing indicates that

3    petitioner was represented by counsel and both counsel and petitioner were present and had an

4    opportunity to present their arguments and were then informed on the record why parole was

5    denied.  (ECF No. 1 at 11-20, 50-52.)  The federal Due Process Clause requires no more.

6    Petitioner's argument fails under Section 2254 habeas review because it implicates questions of

7    state law only, specifically the question of how petitioner's adjusted period of confinement should

8    be calculated under California law and the outcome of that calculation if and when he is found

9    suitable for parole in the future.

10        In his response to the order to show cause, petitioner expands on his arguments made in

11   the petition.  Nevertheless, as pointed out by respondent, petitioner is knocking on the wrong

12   door.  His remedy for alleged violation of the Butler settlement agreement is to raise his claims in

13   the state court, such as through a contempt motion as suggested by respondent, not in this federal

14   forum.  Petitioner has sought relief in state court, unsuccessfully.  It is not the prerogative of this

15   court to assess the propriety of the state court decisions, no matter how in error petitioner

16   perceives them to be.

17        Even if this court interprets petitioner's claim herein as one being sought directly under

18   the Eighth Amendment to the federal Constitution, and not the similarly worded state

19   constitution, petitioner's claim also fails.  "There is no constitutional or inherent right of a

20   convicted person to be conditionally released before the expiration of a valid sentence."

21   Greenholtz v. Inmates of the Nebraska Penal & Correctional Complex, 442 U.S. 1, 99 S.Ct. 2100,

22   2104 (1979).  And the maximum sentence petitioner received, as even petitioner concedes, is

23   potentially life imprisonment.  The possibility that Petitioner will have been incarcerated in

24   excess of the applicable base term if and when he ultimately is found suitable for parole does not

25   implicate the Eighth Amendment, given his "life" sentence.

26        The Supreme Court has never held that a sentence of seven years to life, in and of itself,

27   violates the Cruel and Unusual Punishment Clause.  It has also not determined that such a

28   sentence imposed for the crime of first degree murder is excessive for purposes of the Eighth

6

1    Amendment.  As petitioner is serving a sentence that is consistent with California law, his

2    punishment cannot be considered excessive or disproportionate under clearly established Eighth

3    Amendment precedent.  See Ewing v. California, 538 U.S. 11, 123 S.Ct. 1179, 1186–87 (2003)

4    ("'Eighth Amendment does not require strict proportionality between crime and sentence'";

5    "'[r]ather, it forbids only extreme sentences that are "grossly disproportionate" to the crime'")

6    (citation omitted); see also Harmelin v. Michigan, 501 U.S. 957, 111 S.Ct. 2680, 2701–02 (1991)

7    (upholding sentence of life without the possibility of parole for possession of 672 grams of

8    cocaine by first time offender); Lockyer v. Andrade, 538 U.S. 63, 123 S.Ct. 1166, 1173–75

9    (2003) (affirming 25 years to life sentence under Three Strikes law for petty theft of $153.54

10   worth of videotapes).  These Supreme Court decisions indicate that the term Petitioner has served

11   to date for the crime of first degree murder with the use of a firearm is not so disproportionate as

12   to violate the Eighth Amendment or due process.

13          To state an Equal Protection claim, petitioner must allege that he was intentionally treated

14   differently from others similarly situated and that there was no rational basis for the difference in

15   treatment.  See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); City of Cleburne,

16   Tex. v. Cleburne Living Center, 473 U.S. 432, 439, 446 (1985).  Petitioner has not shown that he

17   was intentionally treated differently from other similarly situated parole applicants.  See Remsen

18   v. Holland, 2012 WL 5386347, at *5 (E.D.Cal. Nov.1, 2012) (in light of discretionary and "highly

19   fact bound" nature of parole decision, and legal standards governing parole decision, "the

20   histories of other prisoners do not establish that Petitioner was similarly situated with other

21   prisoners or tend to show any invidious discrimination that would be protected under the federal

22   Equal Protection Clause"); Rowe v. Cuyler, 534 F.Supp. 297, 301 (E.D. Pa. 1982), aff'd, 696

23   F.2d 985 (3d Cir. 1982) (unpublished disposition) ("Indeed, it is difficult to believe that any two

24   prisoners could ever be considered 'similarly situated' for the purpose of judicial review on equal

25   protection grounds of broadly discretionary decisions [such as eligibility for prison pre-release

26   program] because such decisions may legitimately be informed by a broad variety of an

27   individual's characteristics."); see also Wilson v. Walker, 2011 WL 572116, at *4 (E.D. Cal. Feb.

28   15, 2011), adopted, 2011 WL 1087285 (E.D. Cal. Mar. 23, 2011) ("petitioner was treated equally

7

1   to other indeterminate life-term inmates seeking parole in that he was given a hearing pursuant to

2   state law where his individual circumstances were considered in determining whether he was

3   suitable for parole"). For these reasons, petitioner has not stated a potentially colorable Equal

4   Protection claim. This claim should be dismissed.

5         Finally, petitioner intimates that the BPH's failure to abide by the Butler settlement and

6   fix his adjusted base term violates the First Amendment and his right of access to the courts. The

7   cases he cites in support, People v. Wingo, 14 Cal.3d 169 (1975), and People v. Romo, 14 Cal.3d

8   189 (1975), concern the Eighth Amendment and the Equal Protection Clause, not the First

9   Amendment. Petitioner has made no allegation that his right of access to the courts has been

10   impeded. Therefore, this claim is rejected.

11         Based on the claims raised in the petition and appended exhibits, petitioner is not entitled

12   to federal habeas relief.

13   CONCLUSION

14         Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, this court must

15   issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A

16   certificate of appealability may issue only "if the applicant has made a substantial showing of the

17   denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons set forth in these

18   findings and recommendations, a substantial showing of the denial of a constitutional right has

19   not been made in this case.

20         Accordingly, IT IS ORDERED that: the Clerk of the Court assign a district judge to this

21   case.[5]

22         For the reasons stated herein, IT IS HEREBY RECOMMENDED that:

23         1.  Petitioner's application for a writ of habeas corpus be summarily dismissed; and

24         2.  The District Court decline to issue a certificate of appealability.

25         These findings and recommendations are submitted to the United States District Judge

26   _____

27   [5]  Respondent expressly recognized that the court desired an election from respondent concerning
     consent to the magistrate judge as the presiding judge, but respondent then made no such election.
     Oversight or not, the undersigned will simply refer the final decision here to the assigned district

28   judge.

8

1   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

2   after being served with these findings and recommendations, petitioner may file written

3   objections with the court.  The document should be captioned "Objections to Magistrate Judge's

4   Findings and Recommendations."  Any response to the objections shall be filed and served within

5   fourteen days after service of the objections.  Petitioner is advised that failure to file objections

6   within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v.</u>

7   <u>Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

8   Dated: March 17, 2016

9                                        /s/ Gregory G. Hollows

10                                 UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15   GGH:076/mage2318.dis

16

17

18

19

20

21

22

23

24

25

26

27

28